IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Mariela VALDERRAMA,
      Plaintiff                 :
                                          :

v.                                          :      CIVIL NO.  L-05-747
                                          :

HONEYWELL TECHNOLOGY     :
SOLUTIONS, INC.,                         :
      Defendant                :

MEMORANDUM

Now pending is Defendant's motion for summary judgment. Because the parties have adequately briefed the issues, a hearing is unnecessary.[1] See Local Rule 105.6 (D. Md. 2004). For the reasons stated herein, the Court will, in a separate order, grant the motion and dismiss the case.

**I.    BACKGROUND**

On February 8, 2005, Mariela Valderama ("Valderrama") filed the instant suit against her former employer, Honeywell Technology Solutions, Inc. ("Honeywell").[2] Her complaint states the following claims:

- Count I (state law): Invasion of privacy.
- Count II (state law): Invasion of Privacy with Unreasonable Publicity Given to Private Life.
- Count III (federal law): Intentional discrimination in violation of Title VII of the 1964 Civil Rights Act.
- Count IV (state law): Intentional Infliction of Emotional Distress.
- Count V (state law): Negligence.

---

[1] Also pending is Ms. Valderrama's Motion to File Sur-Reply (Docket No. 102), which the Court will DENY as MOOT.

[2] During the time period relevant to this law suit, Ms. Valderrama went by her married name, Mariela Rotella.

Because of discovery snags, the Court held a long and detailed discovery hearing on November 18, 2005, during which Valderrama, who is pro se, described her claims and the discovery she sought. In a six page Order recapping the hearing, the Court: (i) required Honeywell to answer twenty-four interrogatories that the Court laid out in the order, (ii) required Honeywell to produce fourteen categories of documents, and (iii) authorized Valderrama to take the depositions of ten Honeywell employees. The Court also specified the discovery that Valderrama was required to provide to Honeywell.

Honeywell fully complied with the Court's Order. At the close of discovery, the company moved for summary judgment on all claims. The issues were fully briefed. Because Valderrama's claims are factually unsupported, Honeywell is entitled to summary judgment.[3] In its discussion, the Court will analyze first the federal claim, then the state claims.

## II.   ANALYSIS

### A.   Count III: Title VII Claims:

#### 1. Retaliation:

In 2002, Lockheed Martin was the prime contractor on a NASA project, the Consolidated Satellite Operations Contract. Lockheed Martin subcontracted with

---

[3] The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

Honeywell for operations and software engineering support. On April 29, 2002, Valderrama, a software engineer, was terminated as part of a reduction in force ("RIF"). Valderrama's principal claim is that her termination was retaliatory. Honeywell raises both procedural and substantive defenses.

Honeywell argues that Valderrama's claim is time-barred because she did not file a charge of discrimination with the EEOC within 300 days of her termination.[4] Valderrama filed her charge on November 2, 2004, more than two years after the RIF.

Valderrama argues that her claim is not time-barred because she had filed an "initial discrimination complaint" with the EEOC on June 13, 2002. (Actually, the document is an "EEOC Form 233 Intake Questionnaire.") She contends that the EEOC failed to keep a record of, or take action on, her questionnaire.

Honeywell contends that the intake questionnaire cannot suffice for an EEOC charge. Citing Karim v. Staples, Inc., 210 F. Supp. 2d 737, 749 (D. Md. 2002), it contends that the charge filing date, and not the questionnaire filing date, governs. According to Honeywell, even if Valderrama did file the questionnaire, it is insufficient to satisfy the timely filing requirement.[5]

---

[4] In order to maintain an action under Title VII, a plaintiff must file an administrative charge of discrimination within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, one in which "state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." Id. (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998)). Maryland is a deferral state. Id. Its deferral agency, the Maryland Commission on Human Relations (MCHR), has a worksharing agreement with the EEOC whereby a claim filed before one commission is effectively filed before both. See 29 C.F.R. § 1601.74 (designating MCHR as a Fair Employment Practices ("FEP") agency). Accordingly, from the date of her termination, Valderrama had 300 days to file a charge of discrimination with either the EEOC or MCHR.

[5] As a threshold matter, it is disputable whether the questionnaire was ever filed. The document bears no EEOC date stamp, and Valderrama offers no proof that the

The analysis is not as simple as Honeywell suggests. The company fails to mention the cases that have explicitly considered whether an intake questionnaire may serve as a charge. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1319-20 (11th Cir. 2002) (collecting cases). Courts have held that a filed questionnaire may constitute a charge if it "manifested an intent to activate the Act's machinery." Id.

The Fourth Circuit has not precisely addressed the issue. It has, however, twice accepted as a filed charge a letter or affidavit not submitted on an official agency form.[6] The decisional touchstone was whether the homemade charge contained the information required by the applicable regulation, 29 CFR § 1601.12. According to the regulation, a charge should contain "a clear and concise statement of facts, including pertinent dates, constituting the alleged unlawful employment practices." Id. at § 1601.12(a)(3). At a minimum, the charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."[7] Id. at § 1601.12(b).

In this case, it would be stretching the point to accept the intake questionnaire as a charge. The questionnaire fails to describe Valderrama's claim with any clarity or

---

Commission ever received it. Furthermore, it is disputable when the questionnaire was completed. Although Valderrama signed it under penalty of perjury, she did not date her signature. For purposes of summary judgment, however, the Court will assume that Valderrama filled out the form and filed it with the EEOC on June 13, 2002, approximately forty-five days after her termination.

[6]    In Waiters v. Robert Bosch Corp., 683 F.2d 89, 91 (4th Cir. 1982), the plaintiff executed a detailed, five-page affidavit that he then forwarded to the EEOC. Because the affidavit clearly satisfied the regulatory definition of a charge, the Fourth Circuit held that it satisfied the 300 day timely filing requirement. Id. In Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir 2002), the Court, relying in part on Waiters, held that a timely and substantively sufficient, but unsworn, letter may constitute a charge if later supplemented with a sworn charge.

[7]    The regulation also provides that a charge may be amended to "clarify or amplify allegations, or to allege additional unlawful acts." 29 CFR § 1601.12(b).

precision. In the how-have-you-been-harmed section, Valderrama checked off the boxes pre-marked "Discharge," "Demotion," and "Harassment." In the employer-motivation section, she checked "Race," "National Origin," "Age," and "Retaliation for having complained about discrimination."

In the explain-the-facts section, Valderrama wrote the following:

- "Constant comments about people I greeted."
- "Constant comments identifying my private activities."
- "Comments about what I typed on my computer."
- "Comments about my work."
- "Comments about my potential jobs."
- "Comments about my status."

The gist of her complaint is that unidentified persons made comments about her. She fails to describe those comments, state who made them, or connect them to a discharge, a demotion, or harassment. She also fails to connect the comments to racial discrimination, national origin discrimination, age discrimination, or retaliation. In short, the questionnaire, as completed, does not meet the minimal standard under 29 CFR § 1601.12(b).

Furthermore, under the circumstances, the Court cannot reasonably find that by filing the questionnaire Valderrama intended to lodge a formal charge of discrimination. The questionnaire states that Commission employees will use it to determine whether the EEOC has jurisdiction and to provide "pre-charge filing counseling." The EEOC did not treat Valderrama's questionnaire as a charge.[8] Assuming that she filed the document on

---

[8] A charge serves the important functions of notifying employers of alleged discrimination and initiating the agency's investigation. Chako v. Patuxent Institution, 429 F.3d 505, 510 (4th Cir. 2005). The questionnaire served neither of these aims. There is no evidence that the Commission processed it, assigned a charge number, investigated Valderrama's allegations, or notified Honeywell of her claims.

June 13, 2002, Valderrama did not follow up with the Commission until November 2, 2004, meaning that she allowed her claim to languish for more than two years.

The questionnaire, therefore, neither satisfies the regulation nor "manifests an intent to activate the Act's machinery." Accordingly, it cannot stand service as a charge. Valderrama filed her 2004 charge too late, and Count III is time-barred.

Even if Count III were not barred by limitations, the Court would dismiss it as factually unsupported. According to Valderrama, she was terminated for opposing Honeywell's practice of leaking to outsiders personal information about herself and other employees.[9] To protest this abuse, Valderrama typed "PERSONAL PRIVATE INFORMATION LEAKS" as a command on her computer. In response, the UNIX program she was running flashed an error message. She repeated this process several times in succession. Valderrama's theory is that her employer, which was monitoring her computer, construed her typed statements as a protest and fired her in retaliation.

There are many problems with this theory. Most notably, Valderrama offers no evidence that Honeywell was improperly divulging personal information about its employees.[10] Even if Honeywell were doing so, she has not shown how such leaks constitute "a practice made unlawful" by Title VII.[11] Therefore, her "protest," if it may

---

[9] Valderrama regards this as a retaliation claim. Title VII's anti-retaliation provision is found at 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Valderrama must prove that: (i) she engaged in a protected activity, (ii) Honeywell took an adverse employment action against her, and (iii) the two events are causally connected. Albero v. City of Salisbury, 422 F. Supp. 2d 549, 559-60 (D. Md. 2006) (quoting Honor v. Booz Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004)).

[10] Honeywell has always denied that it engaged in such surveillance.

[11] Title VII's anti-retaliation provision only protects employees who oppose practices "reasonably believed" to be unlawful under Title VII. EEOC v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir.2005). Valderrama has never contended that

be so characterized, is unprotected by Title VII.  Even if it were protected, there is no evidence that Honeywell monitored Valderrama's computer, intercepted her messages, considered them a protest, and then terminated her in retaliation.

The record, which Honeywell comprehensively lays out in its papers, establishes that it had a legitimate, nondiscriminatory reason for terminating Valderrama: her position was eliminated.[12]  Lockheed Martin, the prime contractor, requested that Honeywell replace five of its employees with employees from another subcontractor.[13]  Honeywell unsuccessfully tried to persuade NASA that its employees were still needed.  Honeywell also tried to find the employees other positions.  Eventually, three of the five found work within the company on the "Big Dig" project in Boston.  Valderrama and Nancy Johnson, a white female, were unable to find positions at the Big Dig and were terminated.

After Honeywell had produced this legitimate, neutral reason for terminating Valderrama, it was her burden to prove that the reason was pretextual.[14]  This she has not

---

the "leaks" somehow violated Title VII in the first instance.

[12]   In its summary judgment briefs, Honeywell fully supports its position with references to the record.  Valederrama's Opposition is a miscellany of surmise, speculation and bare assertions.

[13]   The five Honeywell employees were: (1) Nancy Johnson (a white female), (2) Jenny Pan (an Asian female), (3) Macello Reynolds (a Hispanic male), (4) Liz Morgan (a white female), and Valderrama (Hispanic female).

[14]   A Title VII plaintiff must demonstrate that a legitimate nondiscriminatory reason was pretextual by showing "both that the reason was false and that discrimination was the real reason for the challenged conduct."  Smith v. First Union Nat. Bank, 202 F.3d 234, 248 (4th Cir. 2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

done. Accordingly, the Court will grant Honeywell's motion and dismiss Count III of the complaint.

### 2. National Origin:

In her complaint, Valderrama raises a claim of national origin discrimination.[15] In her opposition, however, Valderrama never discusses her claim. Accordingly, the Court finds that Valderrama has abandoned it. See Bosley v. Baltimore County, MD., 804 F. Supp. 744, 748, n.9 (D. Md. 1992).

### 3. Sex Discrimination:

In her opposition, and for the first time in this case, Valderrama raises the claims of sex discrimination and hostile work environment. Honeywell correctly notes that Valderrama is barred from raising them now, as she neither mentioned them in her two EEOC filings, nor in her complaint.[16]

### C. Valderrama's Common Law Claims:

Because the Court is dismissing Valderrama's Title VII claims, there is nothing to which to append the state claims. Nonetheless, this Court will retain jurisdiction over them. Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) ("federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away"). It is prudent to exercise that jurisdiction. Valderrama's claims are so far

---

[15] Among other things, Valderrama alleges that some co-workers teased her by stating that Columbia would appoint her as an ambassador.

[16] See Mylan Laboratories, Inc. v. Akzo, N.V.. 770 F.Supp. 1053, 1068(D. Md. 1991) ("it is axiomatic that the complaint may not be amended by [a] brief[] in opposition") (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984)); Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000) (plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit).

fetched and factually unsupported that they deserve to be dismissed.  This Court is confident that the Maryland state courts would reach the same result.[17]

### 1. Count I: Invasion of Privacy:[18]

Valderrama contends that HTSI invaded her privacy by: (i) following her, (2) bugging her home telephone, (3) installing a listening device in her car, and (4) monitoring her home computer.  Honeywell denies that it took any of these actions.  Despite an opportunity for full discovery, Valderrama offers no evidence other than her own suspicions to support her claims.  Accordingly, Count I will be dismissed.

### 2. Count II: Unreasonable Publicity:[19]

To Valderrama's knowledge, NASA never considered her for a job.  Yet because her co-workers made comments indicating that she was being considered by NASA, Valderrama concludes that Honeywell was investigating her and spreading rumors about her.  She complains that her co-workers drew unwanted attention to her, her job prospects, and her professional contacts.

---

[17] The alternative would be for this Court to dismiss the claims without prejudice so that Valderrama could re-file them in state court.  This would be wasteful, because they would inevitably be dismissed as unfounded.

[18] Valderrama actually appears to advance a tort claim for "unreasonable intrusion on the seclusion of another."  For such a claim, Valderrama must prove that (1) Honeywell intentionally intruded upon her solitude or seclusion or private affairs, and (2) that this intrusion was highly offensive to a reasonable person.  See, e.g., Pemberton v. Bethlehem Steel Corp., 502 A.2d 1101, 1116 (Md. Ct. Spec. App. 1986).

[19] Under Maryland law, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy if the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  Klipa v. Board of Educ. of Anne Arundel County, 54 Md.App. 644, 654-655, 460 A.2d 601 (1983) (quoting Restatement (2d) Torts § 652D).

Even if Valderrama's co-workers speculated about her future employment, that innocuous commentary cannot bear the weight of an unreasonable publicity claim. The tort touches only the intimate details of one's life. See Restatement (2d) Torts § 652D, com. b. Accordingly, the Court will dismiss Count II.

### 3. Count IV: Intentional Infliction of Emotional Distress:[20]

In conclusory terms, Valderrama contends that Honeywell created a hostile work environment that caused her severe emotional distress. She never attempts to show that co-workers intentionally or recklessly tried to harm her, nor does she recount any incidents of indecent or extreme behavior. She complains that her distress caused her work to suffer, but this vague complaint is insufficient to trigger liability. The tort is reserved for only a "disabling emotional response," for "wounds that are...incapable of healing themselves."[21] Accordingly, Count IV will be dismissed.

### 4. Count V: Negligence:

Valderrama's negligence claim merely rehashes her invasion of privacy and unreasonable publicity claims. The Court has already addressed those on the merits. Accordingly, Count V will be dismissed.

---

[20] To make a claim for intentional infliction of emotional distress, Valderrama must prove that: (1) the conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) the conduct caused her distress, and (4) that the distress was severe. See Lynn v. O'Leary, 264 F. Supp. 2d. 306, 312 (D. Md. 2003) (citing Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 484 (D. Md. 2002)).

[21] Bryant v. Better Bus. Bureau of Greater Maryland, 923 F. Supp. 720, 748 (D. Md. 1996) (quoting Harris v. Jones, 380 A.2d 611, 616 (Md. 1977)); Caldor, Inc. v. Bowden, 330 Md. 632, 642, 625 A.2d 959, 963 (1993) (quoting Hamilton v. Ford Motor Credit Co., 66 Md. App. 46, 61, 502 A.2d 1057, 1065 (1986)).

## III.  CONCLUSION

For the foregoing reasons, the Order will, by separate Order, GRANT Honeywell's motion, and DIRECT the Clerk to CLOSE the case.

Dated this 14th day of February 2007.

/s/
_____
Benson Everett Legg
Chief  Judge